IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA DOUGLAS PETERS,

    Petitioner,

v.

BRIAN BELLEQUE,

    Respondent.

Case No. 6:11-cv-01298-JE

AMENDED FINDINGS
AND RECOMMENDATION[1]

Kristina Hellman, Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Nick M. Kallstrom, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

---

[1] Amended to reflect that the Amended Petition for Writ of Habeas Corpus (#6) is the operative pleading, not the original Petition for Writ of Habeas Corpus (#2).

1 - AMENDED FINDINGS AND RECOMMENDATION

JELDERKS, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court conviction for Murder. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#6) should be denied.

## BACKGROUND

Petitioner is currently housed within the Oregon Department of Corrections serving a life sentence for murder. During his post-conviction review, the Oregon Court of Appeals set out the background of this case as follows:

> At the time of the crime, petitioner was 32 years old and the victim was 52. Their relationship was consistently described as turbulent. According to petitioner's mother and other witnesses, petitioner had a history of depression that worsened after he became involved with the victim. The victim was emotionally volatile and had frequent angry outbursts; one witness, a neighbor, testified that the victim would be 'nice and happy one moment and then flip the switch, she's yelling and screaming.' The victim also had a history of alcohol and drug abuse, as well as dental and other physical problems that caused her significant pain.
>
> Petitioner and the victim lived together for several years before the murder, but, on several occasions, petitioner either left or asked the victim to move out as a result of the conflicts between them. Those separations lasted anywhere from a few days to one and one-half months. Petitioner testified that the victim often became full of rage and would storm around the house, slamming doors and screaming at petitioner. Petitioner and his mother both testified to one incident in July 2003 when they came back from a weekend trip

2 - AMENDED FINDINGS AND RECOMMENDATION

to the coast to find that the victim had splattered blood all over the walls and surfaces of the home where petitioner and the victim then lived. The victim claimed that she had cut her finger and was looking for a Band-Aid. Petitioner also testified that the victim had threatened suicide on several occasions, although he also indicated that she had never actually made a suicide attempt while she was with him.

There was evidence of prior physical violence between the couple; twice petitioner came to work with a black eye; another time, he had scratch marks on his neck, where, he said, the victim had tried to choke him. Although petitioner was described as a shy, quiet person who was not generally aggressive, there was also evidence that, in previous altercations with the victim, petitioner became anxious to the point where he was physically violent toward her. Petitioner himself testified as to two incidents in which the victim 'would come at me physically and just push me and push me and push me until I would have to push her back.' In one of those incidents, petitioner testified that he pushed the victim and she fell onto the bed frame, injuring her ankle; another time, he pushed her and she fell onto a coffee table, badly cutting her calf.

The wife of one of petitioner's coworkers testified that petitioner sometimes stayed at their house because '[h]e wanted to get away from [the victim] because she was being physically abusive to him and he didn't want to hurt her and so he stayed away.' Petitioner also testified that he slept in his truck to avoid confrontations with the victim; several months before the murder, petitioner moved into the spare room in their house because he was so upset by the victim's chaotic behavior. Friends and family members testified that petitioner stayed with the victim because he felt responsible for her and because he worried that she did not have a job or

3 - AMENDED FINDINGS AND RECOMMENDATION

financial resources and would not be able to sustain herself without him.

A few days before the murder, petitioner and the victim spent a nice evening together in celebration of petitioner's birthday. Later that night, however, the victim became upset and angry, slamming doors and screaming. Petitioner testified that

> '[the victim] was saying she wanted people * * * to run into the house and kill her. She wanted--she screamed out to God to take her out. She screamed things like, I'm going to rob a bank, I'm going to go down and kill my mom, just all those kind of--I mean, just she was sick of the pain she said.'

According to petitioner, he was unable to console her. The following day, petitioner went to work and, when he came home, the house was a mess—'there were dishes all over the place, broken dishes, glasses, things strewn around the house, her clothes.' The next day, petitioner again went to work. When he came home that evening, he avoided the victim, staying in the master bedroom for the most part. However, he could hear the victim in other parts of the house slamming doors and saying the same things over and over about having 'someone come in and take her out.' At some point, petitioner decided to leave and began packing some clothes. When the victim came into the bedroom and realized what petitioner was doing, she ran out of the room and came back, flicking blood on him and pushing him, telling him that she would not let him leave. Petitioner testified that he pushed her off of him and onto the bed. He then grabbed her and pushed her to the ground so that she was in a kneeling position and he was holding her hair. He asked her if she 'really want[ed] to die,' reached into his closet, pulled out a gun, and asked her again, 'are you sure this is what you want?' When she said 'yes,' he shot her twice in the head.

4 - AMENDED FINDINGS AND RECOMMENDATION

The trial court rejected petitioner's defense of extreme emotional disturbance and found him guilty of murder. The trial court concluded that petitioner established the first component of the defense--that the homicide was committed under an extreme emotional disturbance, [footnote omitted] but failed to prove the second-that "such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act." The court did not address the third element. The court explained:

> 'I don't believe that the defense has met its burden in the totality required by the statute. I do believe [petitioner] was acting under an extreme emotional disturbance. I do believe [one witness] had the wrong standard. I do believe that it could be a cumulative effect. I believe that's what it was. It was the last straw.
>
> 'However, I do also believe that it was at least reckless for [petitioner] to continue this relationship, after the numerous separations that had happened. As [one witness] said, there was no good going to come of this. And she pretty much predicted the future. That's the ruling of the court.' [footnote omitted]

Petitioner appealed, challenging the trial court's conclusion that he had not satisfied the 'reckless' component of the defense. We affirmed petitioner's conviction without opinion, and the Supreme Court denied review. *State v. Peters*, 216 Or App 337, 172 P3d 305 (2007), rev den, 344 Or 401 (2008).

*Peters v. Belleque*, 241 Or. App. 701, 704-08, *rev. denied*, 344 Or. 571 (2011).

5 - AMENDED FINDINGS AND RECOMMENDATION

After his direct appeal concluded, petitioner filed for post-conviction relief ("PCR") in Marion County where the PCR trial court denied relief on all of his claims. Respondent's Exhibit 119. The Oregon Court of Appeals affirmed that decision in its written opinion referenced above, and the Oregon Supreme Court denied review.

Petitioner filed this federal habeas corpus action on October 27, 2011 raising four grounds for relief containing claims of ineffective assistance of trial counsel. Respondent asks the court to deny relief on the Petition because: (1) petitioner has not argued most of his claims; and (2) petitioner's claims were properly denied by Oregon's state courts.

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

6 - AMENDED FINDINGS AND RECOMMENDATION

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

## II. **Unargued Claims**

As previously noted, petitioner raises four grounds for relief in his Petition for Writ of Habeas Corpus. In his supporting memorandum, however, petitioner chooses to brief only the following claim: whether trial counsel was constitutionally ineffective when he failed to make necessary arguments on a key element of his affirmative defense of extreme emotional disturbance ("EED").

Petitioner does not argue the merits of his remaining claims, nor does he address any of respondent's arguments as to why relief

7 - AMENDED FINDINGS AND RECOMMENDATION

on those claims should be denied. As such, petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). Even if petitioner had briefed the merits of these claims, the court has examined them based upon the existing record and determined that they do not entitle him to relief.

### III. Argued Claim

Pursuant to ORS 163.135(1), EED constitutes an affirmative defense to Murder and has three components:

> (1) Did the defendant commit the homicide under the influence of an extreme emotional disturbance? (2) Was the disturbance the result of the defendant's own intentional, knowing, reckless, or criminally negligent act? (3) Was there a reasonable explanation for the disturbance?

*State v. Counts*, 311 Or. 616, 623, 816 P.2d 1157 (1991) (footnote omitted).

Petitioner asserts that, during closing argument, his trial attorneys failed to address the second element of the EED defense: whether the emotional disturbance was the result of petitioner's own intentional or reckless actions. Specifically, he faults counsel for failing to explain the legal requirements for a finding of recklessness, not highlighting how the evidence demonstrated that petitioner was not reckless, and erroneously asserting that

8 - AMENDED FINDINGS AND RECOMMENDATION

the State had not contested that element of the defense when, in fact, it had.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

9 - AMENDED FINDINGS AND RECOMMENDATION

The Oregon Court of Appeals felt that petitioner's claim of ineffective assistance of counsel "require[d] little discussion." *Peters*, 241 Or. App. at 710. It concluded, "Given the record before us, it is far from clear that the trial court applied an incorrect analysis of the 'reckless' standard, thereby triggering an obligation by defense counsel to intervene. In short, we are not persuaded that the post-conviction court erred in determining that petitioner failed to carry his burden of proving that trial counsel was inadequate in not making that argument." *Id.*

For petitioner to sustain his burden of proof and prevail in this federal habeas action, he must show that trial counsel failed to make a meritorious argument at closing that petitioner's conduct fell outside the scope of Oregon's recklessness standard. The Oregon state courts have provided ample guidance on this state law issue. The criminal trial judge clearly interpreted the conduct at issue as sufficient to meet the recklessness standard. During his direct appeal, petitioner specifically challenged the trial court's analysis of the recklessness standard. The State responded both that the claim was unpreserved, and that it failed on its merits. Respondent's Exhibit 105. Although the Oregon Court of Appeals affirmed the decision of the trial court, it did so without issuing a written opinion. Respondent's Exhibit 108. Consequently, it is

10 - AMENDED FINDINGS AND RECOMMENDATION

difficult to determine precisely upon what basis petitioner's appeal on this claim was denied.[2]

The PCR trial judge determined that petitioner had not proven his claims by a preponderance of the evidence and, as related above, the Oregon Court of Appeals found it "far from clear" that Oregon law supported petitioner's interpretation of the recklessness standard and its application to the facts of his case. In short, four different Oregon courts had an opportunity to review the reckless element of the EED defense and none adopted the position petitioner advocates. Where Oregon's judges have uniformly declined to adopt petitioner's interpretation of the recklessness standard as it relates to the facts of his case, it would not be proper for this court to reach a contrary conclusion. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

The Oregon courts all expressly or impliedly found that petitioner's conduct supported a finding of recklessness as contemplated by ORS 163.135. Therefore, his attorneys were under no obligation to advance a contrary position that lacked merit. See Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994), rev. denied,

---

[2] Even if the claim had not been properly preserved, the Oregon Court of Appeals still could have resolved it in petitioner's favor if the trial judge's interpretation of the reckless standard had constituted plain error. Ailes v. Portland Meadows, Inc., 312 Or. 376, 381, 823 P.2d 956 (1991).

11 - AMENDED FINDINGS AND RECOMMENDATION

513 U.S. 1001 (1994)(an attorney is not required to file a motion he knows to be meritless). Accordingly, the decision of the Oregon Court of Appeals denying relief on petitioner's ineffective assistance of counsel claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#6) should be denied and a judgment should be entered dismissing this case with prejudice. The court should, however, issue a Certificate of Appealability limited to petitioner's argued claim of ineffective assistance of counsel.

## SCHEDULING ORDER

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 17 days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this **11** day of April, 2014.

*John Jelderks*
John Jelderks
United States Magistrate Judge